# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
LANDMARK LEGAL FOUNDATION,   )
)
           Plaintiff,   )
)      Civil Action No: 13-1468 (RBW)
         v.   )
)
DEPARTMENT OF LABOR,   )
)
          Defendant.   )
_____)

## MEMORANDUM OPINION

The plaintiff, Landmark Legal Foundation ("Landmark"), filed this civil case, alleging that the defendant, the United States Department of Labor (the "Department"), violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), by "fail[ing] to promptly make available the records sought by [its two] FOIA requests." Complaint ("Compl.") ¶ 25. Currently before the Court are the Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 29, and the Plaintiff's Cross-Motion for Partial Summary Judgment ("Pl.'s Mot."), ECF No. 31. After carefully considering the parties' submissions, the Court concludes for the following reasons that it must grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion for partial summary judgment.[1]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement Under LCvR 7(h)(1) ("Def.'s Facts"); (3) Plaintiff Landmark Legal Foundation's Memorandum of Law in Opposition to Defendant's Renewed Motion for Summary Judgment and in Support of Plaintiff's Renewed Cross-Motion for Partial Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Statement of Material Facts Not In Dispute ("Pl.'s Facts"); (5) the Reply Memorandum in Support of Its Renewed Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion ("Def.'s Reply"); and (6) Plaintiff Landmark Legal Foundation's Reply Memorandum in Support of Its Cross-Motion for Summary Judgment ("Pl.'s Reply").

# I.    BACKGROUND

On July 15, 2013, Landmark submitted two FOIA requests to the Department.  Pl.'s Facts

¶ 1.  "The first request sought '[r]ecords evincing the use of any private or personal e-mail

account, text messaging service, instant messaging service, or any social media service such as

Facebook, Google Plus[,] or other private platform, for the conduct of [the Department's]

business from January 20, 2009[,] to July 15, 2013.'"[2]  Id. ¶ 2 (first alteration in original); see

Compl., Exhibit ("Ex.") 1 (Letter dated July 15, 2013 Re: Freedom of Information Act Request

Department of Labor Employee Use of Private Communication Services ("Private

Communications Letter")) at 2.

> Landmark limited the scope of the first request to [the Department's] employees
> in political or career positions, including (a) political appointees; (b) those serving
> in the Senior Executive Service . . . ; (c) those serving in the Office of the
> Secretary; (d) those serving in the Office of the Deputy Secretary; [and] (e) those
> serving in the Office of the General Counsel.

Id. ¶ 3; see also Compl., Ex. 1 (Private Communications Letter) at 2.  On or about February 4,

2014, after discussions between the parties, they "agreed to narrow the scope of the request to

approximately [fifty–seven] individuals located in[] (1) the Secretary's Office; (2) the Deputy

Secretary's Office; and (3) the Solicitor's Office . . . ."[3]  Id. ¶ 4.

"Ultimately, [fifty-two] custodians were identified based on the parties' agreed upon

narrowing of the scope of [the first FOIA request]."  Def.'s Facts ¶ 5.  The custodians were

"asked to provide to [the Department] any personal email addresses used during the timeframe

set forth in the request and those email addresses became search terms that were utilized to

---

[2] With respect to Landmark's second FOIA request, see also Compl., Ex. 6 (Letter dated July 15, 2013 Re: Freedom of Information Act Request Alias Email Accounts ("Alias Email Accounts Letter")) at 1–2, Landmark "acknowledged that [the Department's] production fully satisfie[d] [its] request," Def.'s Facts ¶ 18.  Therefore, only Landmark's first FOIA request is at issue.

[3] The identified individuals will hereinafter be referred to as "custodians."  Def.'s Facts ¶ 4.

search the custodians' work email." Id. ¶ 6. For each custodian, the Department conducted a search for responsive documents in the active work email accounts, the archived work email accounts, the Department's networks, and any stored CD-ROMs that were available. See id. ¶¶ 7–8. The Department reached the conclusion that no responsive documents existed in the form of text messages from Blackberry devices and that "[t]he individual custodians did not maintain personal social media accounts, such as Facebook, Google Plus, or instant messages, through [the Department]." Id. ¶¶ 9–10. "[The Department] released records responsive to Landmark's first FOIA request in a rolling production in four releases . . . ." Pl.'s Facts ¶ 5. "In total, [the Department] released 798 pages of agency records it deemed responsive." Id. ¶ 6.

After reviewing the responsive records produced by the Department, Landmark concluded "that [Department] officials use[d] non-government email services to conduct official agency business," id. ¶ 7, and provided several examples as supporting evidence, see, e.g., id. ¶ 14(a)–(k). Based on this conclusion, on May 21, 2014, Landmark informed the Department "that FOIA obligated [the Department] to search non-government servers to ensure an adequate production." Id. ¶ 9. The Department "disagreed[] . . . with Landmark's assertion on the basis that it was not obligated under FOIA to search . . . beyond its own email system." Def.'s Facts ¶ 13. Unable to resolve this dispute, the parties both moved for summary judgment, the resolution of which "turn[ed] on a critical issue: whether the FOIA imposes an obligation on the defendant to search non-governmental email accounts for responsive records to FOIA requests, where there is evidence that those accounts are used to conduct official agency business." Order (Jan. 8, 2016) at 1, ECF No. 25. Upon its review of the parties' submissions, the Court recognized that "[t]his identical issue [was] under consideration by the District of Columbia Circuit," and therefore, the Court denied without prejudice both motions and ordered the parties

to "monitor the status of <u>Competitive Enter. Inst. v. Office of Sci. & Tech. Policy</u> and [to] propose a new briefing schedule for refiling . . . their summary judgment motions after the Circuit issue[d] an opinion or order in that case." <u>Id.</u> at 2–3 (footnote omitted).

In <u>Competitive Enterprise Institute v. Office of Science and Technology Policy</u>, the appellant argued

> that the district court improperly ruled that documents which might otherwise be government records for FOIA purposes need not be searched for or turned over to the requestor because the head of the defendant agency maintained the putative records on a private email account in his name at a site other than the government email site which the agency had searched.

827 F.3d 145, 146 (D.C. Cir. 2016). Reversing the district court's dismissal in favor of the appellee, the Circuit held "that an agency cannot shield its records from search or disclosure under [the] FOIA by the expedient of storing them in a private email account controlled by the agency head." <u>Id.</u>; <u>see also</u> <u>id.</u> at 149 ("If the agency head controls what would otherwise be an agency record, then it is still an agency record and still must be searched [and] produced.").

In light of the Circuit's decision, the parties engaged in extensive discussions regarding the search of the identified custodians' personal email accounts. <u>See</u> Def.'s Facts ¶ 14; Pl.'s Facts ¶¶ 15–17. The Department thereafter informed Landmark "that a search of personal email repositories would be unmanageable," Pl.'s Facts ¶ 16; <u>see also</u> Def.'s Facts ¶ 14, and requested that Landmark "limit[] [its] request to specific subject matters regarding [the Department's] business" and to "propose a narrowed request for [the Department's] consideration," Def.'s Reply, Ex. 1 (Email from Jeremy Simon to Mike O'Neill dated October 6, 2016). In response, Landmark proposed narrowing the date applicability of its request to a six-month time period, and after further prompting, Landmark provided the Department with a list of approximately twenty suggested search terms. <u>See</u> Pl.'s Facts ¶¶ 16–17. The Department concluded that using

the proposed "search terms would be infeasible because using [those] terms would result in a high number of false hits." Id. ¶ 18.  Further negotiations between the parties were unfruitful, see generally id., and the Department now moves for summary judgment, asserting that it is entitled to judgment as a matter of law because "the search that [it] already has undertaken and completed—that is, the search of its own email system using the personal email addresses of the identified custodians—was reasonably calculated to locate agency records responsive to Landmark's request."  Def.'s Mem. at 9.  In response, Landmark simultaneously opposes the Department's position and cross-moves for partial summary judgment, arguing that that "[the Department's] refusal to direct its officials to undertake a search of non-government email repositories . . . constitutes a failure to conduct a search reasonably calculated to uncover responsive records."  Pl.'s Opp'n at 3.

## II.     STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)).  The Court must, therefore, draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir.

1999) (alteration in original) (quoting Exxon Corp. v. FTC, 663 F.2d 120, 126–27 (D.C. Cir. 1980)).  If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, at bottom, "in ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  Shays v. FEC, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citation omitted).

FOIA cases are typically resolved on motions for summary judgment.  Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted).  To prevail on a motion for summary judgment in a case brought under the FOIA when the adequacy of an agency search is challenged, the "defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'"  Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)); see also Summers v. U.S. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (explaining the "peculiar nature of the FOIA" as it relates to summary judgment review).  And courts apply a reasonableness test to determine the adequacy of a search methodology.  Morley, 508 F.3d at 1114.  Thus, a "FOIA search is sufficient if the agency makes 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information

requested.'" Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)).

"Agency affidavits [submitted in FOIA cases] are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Accordingly, once the agency has "shown that its search was reasonable, the burden is on the requester to rebut that evidence by a showing that the search was not conducted in good faith." Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985)). "This [rebuttal] can be done either by contradicting the defendant's account of the search procedure or by [presenting] evidence [showing] the [agency's] bad faith." Id. at 35–36.

## III. ANALYSIS

The question before the Court in this case is whether the Department's search was adequate given that the Department has elected not to search the personal email accounts of the identified custodians for records responsive to Landmark's FOIA request that remains at issue. "In order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). The Department contends that its "search for responsive records on [its] email system was an adequate search in response to [Landmark's] FOIA request." Def.'s Mem. at 9. According to the Department, this is so, because "Landmark's request for records 'evincing the use of any private or personal email account . . . to conduct [the Department's] business' is not a valid FOIA request to the extent Landmark seeks to apply that request to personal email

accounts," id. at 8; see also id. at 12–15 (asserting that Landmark's FOIA request "lacks specificity . . . and would be unreasonably burdensome"). The Department also asserts that collateral estoppel bars Landmark from claiming that its FOIA request as applied to personal email accounts is valid. See id. at 14. Additionally, the Department argues that "the record provides no basis for [Landmark] to rebut the presumption that [its] employees complied with recordkeeping obligations," id. at 8–9, that require them to ensure that use of "personal email for work-related matters . . . would be captured on [its] servers," id. at 16, and therefore, "a search of those accounts is unnecessary even if Landmark's vague request could be construed as an otherwise valid request under [the[ FOIA," id. at 9. The Court will address in turn each of these arguments.

## A. The Applicability of Collateral Estoppel (Issue Preclusion)

The Department first argues that "the doctrine of collateral estoppel precludes Landmark in this case from arguing that it submitted a valid FOIA request." Id. at 14. Specifically, the Department contends that Landmark's FOIA request in this case is identical to its FOIA request in Landmark Legal Foundation v. United States Department of Justice ("Landmark I"), 211 F. Supp. 3d 311 (D.D.C. 2016), see id. at 8, where another member of this Court determined that Landmark's FOIA request in that case was not a valid request, see 211 F. Supp. 3d at 321. In response, Landmark contends that the facts in Landmark I "are readily distinguishable from the facts in the present case" because it has engaged in "significant negotiations with [the Department] to limit the applicability of the request," Pl.'s Opp'n at 13 (noting that in this case, unlike the circumstances in Landmark I, it provided the Department with "specified search terms" and "identified [a] number of officials" subject to its request to limit the scope of its request), and because the Department has "provided . . . records indicating that [its] officials

used their non-government email for agency purposes," id.

"Collateral estoppel (issue preclusion) bars the relitigation of issues previously tried and decided in a court of competent jurisdiction involving the same parties." Kissi v. EMC Mortg. Corp., 887 F. Supp. 2d 1, 6–7 (D.D.C. 2012) (Walton, J.). "The Supreme Court has defined issue preclusion to mean that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" Id. at 7 (quoting Yamaha Corp. of Am. V. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)). "It is well settled that the function of both doctrines is to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." Id. (quoting Wells Fargo Bank, N.A. v. Diamond Point Plaza LP, 971 A.2d 360, 365 (Md. 2009)).

For collateral estoppel to bar a claim, "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2], the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and] [3], preclusion in the second case must not work a basic unfairness to the party bound by the first determination." Martin v. U.S. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (alterations in original) (internal quotation marks and citation omitted). "The party invoking collateral estoppel 'bears the burden of establishing that the conditions for its application have been satisfied.'" Lardner v. U.S. Dep't of Justice, 638 F. Supp. 2d 14, 22 (D.D.C. 2009) (quoting In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n, 439 F.3d 740, 743 (D.C. Cir. 2006)).

To determine whether collateral estoppel applies in this case, the Court finds that an in-depth review of Landmark I is necessary. In Landmark I, Landmark submitted two FOIA

requests to the Department of Justice seeking documents from its Office of Information Policy

(the "Office") and the Civil Rights Division. 211 F. Supp. 3d at 313–14. One of the requests

sought:

> Records evincing the use of any private or personal email account, text messaging
> service, instant messaging service, or any other private electronic communication,
> include[ing] but not limited to those sent via any social media service such as
> Facebook, Google Plus[,] or other private platform, for the conduct of Department
> business from January 20, 2009[,] to July 15, 2013[.]

Id. at 314 (third alteration in original). "[Landmark] indicated that [this] request was limited to

the records of political appointees, individuals serving in the Senior Executive Service,

individuals in the Office of the Attorney General and Office of the Deputy Attorney General, and

in the Civil Rights Division." Id. After the parties discussed Landmark's request, the Office

informed Landmark that it was "unable to conduct a search . . . for the records [Landmark

sought]" because "[a]ny search . . . would locate only e-mails that were forwarded or copied

to/from a Department [of Justice] e-mail account," and Landmark "ha[d] indicated that [it was]

not interested in such material." Id. (citation omitted). Landmark appealed the response, and the

Office denied the appeal based

> on the fact that there was no specific reason to believe that agency staff were using
> personal email to conduct Department [of Justice] business, as well as the fact that
> personal email records not referenced in the Department [of Justice] email system
> do not constitute agency records that could be located by a . . . search.

Id. at 315. The Civil Rights Division responded to Landmark similarly; however, it did produce

to Landmark documents from "then-Assistant Attorney General Thomas Perez's emails for a

six-month period." Id. Landmark then filed suit against the Department of Justice, alleging that

its refusal "to instruct covered employees to search private repositories for responsive records,

despite acknowledging their use" violated the FOIA. Id. (citation omitted).

The court in Landmark I found that Landmark's "request for '[r]ecords evincing the use

of' personal email accounts and other electronic communication and social media platforms to conduct government business [did] not enable a professional [Department of Justice] employee to determine what records [were] being sought." Id. at 318 (first alteration in original). The court reasoned that Landmark had "not define[d] 'evince,' nor explain[ed] how a record can 'evince' the use of personal email or social media accounts." Id. Moreover, the court concluded that "[Landmark's] request [did] not ask for specific records, but rather for any records that might suggest that other records exist." Id. (emphasis in original). In other words, Landmark's "request would require employees to search through all of their communication accounts for anything referencing Department [of Justice] business, without so much as a specific topic by which to narrow" their searches. Id. at 319; see also id. at 319–20 ("Perhaps if [Landmark] were seeking records related to a particular topic, exchange, or piece of official business, it would be reasonable to expect Department [of Justice] employees to locate any agency records in their personal accounts pertaining to that topic, exchange, or piece of business and forward them to the FOIA coordinator, but absent an identifiable search term the request is nearly impossible. An employee cannot search their personal email for 'instances in which I used my personal email to conduct government business'—such a search would not only be difficult to formulate, but would also likely not uncover responsive records—rather, they would need a concrete and specific search term." (citation omitted)).

Furthermore, in Landmark I, "[i]n response to [the Department of Justice's] argument that the request [was] unreasonably burdensome, [Landmark] argue[d] that it [had] 'engaged in a good faith effort to narrow the scope of its [r]equest[].'" Id. at 320. In determining that Landmark's FOIA request was unreasonably burdensome because it had requested "all [ ] personal emails and other forms of communication by all employees within the three divisions,"

id. at 319, the court concluded that "[Landmark's] 'good faith effort' cannot convert an invalid and unreasonable request into a valid and reasonable one," id. at 320. Consequently, the court granted summary judgment to the defendant, because Landmark's FOIA request "did not adequately describe the records sought, and because the request was unreasonably burdensome." Id. at 321.

With this backdrop, the Court finds that collateral estoppel applies in this case, and therefore, Landmark is precluded from arguing that it submitted a proper FOIA request. See Nat'l Treasury Emps. Union v. IRS, 765 F.2d 1174, 1177 (D.C. Cir. 1985) (finding collateral estoppel applicable where, among other things, "the FOIA requests in the two actions [were] identical except for the year"). Landmark's FOIA request in this case and in Landmark I are substantively identical, as both request "[r]ecords evincing the use of any private or personal e-mail account . . . for the conduct of [agency] business from January 20, 2009[,] to July 15, 2013." Pl.'s Facts ¶ 2; Landmark I, 211 F. Supp. 3d at 314. And, the only distinction between the two FOIA requests is the agency from which Landmark seeks information. See Pl.'s Facts ¶ 2; Landmark I, 211 F. Supp. 3d at 314. Therefore, because the two FOIA requests are in essence identical, collateral estoppel applies, as the same issue now being raised (i.e., whether Landmark's FOIA request as drafted is a valid FOIA request) has been "previously tried and decided in a court of competent jurisdiction." Kissi, 887 F. Supp. at 6.

Nonetheless, Landmark argues that its proposed modifications of its FOIA request in this case "[c]onstitute [a] [v]alid FOIA [r]equest [a]nd [r]easonably [d]escribe [the] [r]ecords [s]ought," Pl.'s Opp'n at 12, and therefore, according to Landmark, Landmark I is distinguishable. Primarily, Landmark contends that unlike Landmark I, the parties here have agreed to "limit[] the scope of [Landmark's] FOIA request to [fifty-seven custodians]." Id. at

13.[4]  In addition, Landmark notes that although the Department did not ultimately accept Landmark's proposed modifications, Landmark did provide the Department, upon request, with "a list of specified search terms," id., and "suggested narrowing the date applicability of [its] request," Pl.'s Reply at 4.  However, Landmark has not cited, nor could the Court find, any authority that supports Landmark's position that negotiations to narrow the scope of an agency's search amount to a new, and consequently, valid FOIA request.[5]  In any event, none of these proposed modifications sufficiently distinguish Landmark's FOIA request in this case from its FOIA request in Landmark I because both do not adequately describe what records are being sought, as they fail to "enable a professional [Department] employee to determine what records are being sought," by not "defin[ing] 'evince],'" nor "explain[ing] how a record can 'evince' the use of personal email," 211 F. Supp. 3d at 318, or narrowing the broad reach of the phrase "conduct of [the Department's] business," Pl.'s Facts ¶ 2.  And while Landmark did provide the Department with a list of approximately twenty search terms, those search terms were not sufficiently "concrete and specific," Landmark I, 211 F. Supp. 3d at 320, to narrow Landmark's FOIA request "to a particular topic, exchange, or piece of official business," id. at 319; see also Def.'s Mot., Ex. 3 (Hayes Supplemental Declaration ("Hayes Suppl. Decl.")) ¶ 10 (noting that

---

[4] Landmark also asserts that the facts in this case are distinguishable from the facts in Landmark I because in this case, Landmark has received "records indicating that [Department] officials used their non-government email for agency purposes."  Pl.'s Opp'n at 13.  The Court disagrees that Landmark I is distinguishable on this basis, because as is the case here, in Landmark I, Landmark received a collection of documents from then-Assistant Attorney General Thomas Perez's personal email whose contents related to Department of Justice business.  See 211 F. Supp. 3d at 315.

[5] The Department argues that the parties' discussions to narrow the scope of the search were "settlement discussions . . . in the nature of compromise offers and negotiations covered by Evidence Rule 408," Def.'s Reply at 5–6, and therefore, Landmark's use of these negotiations to distinguish Landmark I from this case would "prejudice" the Department and be "inconsistent with [the] Federal Rule," id. at 7.  However, the Department's reliance on Federal Rule of Evidence 408 is misplaced, as Rule 408 "is a limitation on the admission of evidence produced during settlement negotiations for the purpose of proving liability at trial."  NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Justice, 612 F. Supp. 1143, 1146 (D.D.C. 1985).  Accordingly, because Landmark is not relying on the negotiations as evidence of liability, the Court does not find convincing the Department's argument that these discussions cannot be used to distinguish the factual circumstances in Landmark I from those in this case.

the proposed search terms "were too generic and were likely to result in an unreasonable number of false hits" after the Department "assessed the feasibility of a search of personal email utilizing [the] proposed search terms").  In other words, as the Department notes, these proposed modifications failed to "narrow the substance . . . [or] 'modifi[y]' the language of [Landmark's] request," Def.'s Reply at 5, which was the central basis for the ruling in Landmark I.  And as the court in Landmark I concluded, Landmark's "'good faith effort' [to narrow the scope of the search] cannot convert an invalid and unreasonable request into a valid and reasonable one."  211 F. Supp. 3d at 320; see also id. at 318 ("A proper FOIA request must reasonably describe the records sought, and it must be made in accordance with the regulations of the agency from which records are sought." (citation omitted)).[6]

In sum, the Court concludes that Landmark's FOIA request in this case is identical to its FOIA request in Landmark I, except for the agency from which records are sought.  And because the court in Landmark I has already addressed the issue of whether Landmark's FOIA request as drafted is a valid FOIA request, this Court finds that collateral estoppel precludes Landmark from pursuing that same request in this case.  See Stonehill v. IRS, 534 F. Supp. 2d 1, 7–9

---

[6] Landmark asserts that it "has always believed that its request reasonably described [the] records [sought] and . . . [the Department's] behavior has indic[a]ted it understood what records Landmark [sought]," as the Department did not argue that Landmark's FOIA request was "improper . . . [or] failed to reasonably describe [the] requested records" until after renewing its summary judgment motion in light of the Circuit's decision in Competitive Enterprise Institute.  Pl.'s Opp'n at 15 (noting that the Department was able to "perform[] a search of agency systems and produce[] responsive records").  The Court construes that Landmark is arguing that the Department waived the argument that Landmark did not submit a valid FOIA request.  See Pl.'s Reply at 1 ("[The Department] takes this position after failing to raise any objection as to scope while searching for and producing hundreds of pages of records.").  The Court finds this argument unpersuasive for several reasons.  First, the Department preserved this argument by asserting in its response to Landmark's Complaint that Landmark's FOIA request was "overbroad and [did] not reasonably describe the records sought."  Answer at 1 (Dec. 4, 2013), ECF No. 7.  And, contrary to Landmark's position, relevant legal authority prior to the Circuit's decision in Competitive Enterprise Institute "treat[ed] personal email accounts of government officials as falling outside the scope of FOIA," Def.'s Reply at 3 (citing cases) (noting that its primary argument in its initial summary judgment motion was that personal email accounts did not fall within the reach of FOIA), until the Circuit's decision in Competitive Enterprise Institute. Moreover, to the extent that Landmark contends that the Department waived this argument because the Department has already produced responsive documents from its internal servers, that argument is likewise unavailing because the "release of [those] records does not prove that the request adequately described the records sought" as applied by Landmark to personal email repositories.  Landmark I, 211 F. Supp. 3d at 320.

(D.D.C. 2008) (finding collateral estoppel applicable to FOIA claim because the issues raised in that case were the same issues raised in prior litigation).

### B.      Improper FOIA Request

"Two requirements must be met in order for a FOIA request to be proper: (1) the request must 'reasonably' describe the records sought, and (2) it must be 'made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" Freedom Watch, Inc. v. CIA, 895 F. Supp. 2d 221, 228 (D.D.C. 2012) (quoting Lowe v. DEA, No. 06-cv-1133, 2007 WL 2104309, at *4 (D.D.C. July 22, 2007)).  "Omitting one of the two threshold requirements for a proper FOIA request . . . warrants dismissal." Id. (quoting Lowe, 2007 WL 2104309, at *5).

The court in Landmark I concluded that Landmark's FOIA request as drafted was not a valid FOIA request because it did not adequately describe the records sought and because it was unreasonably burdensome.  See 211 F. Supp. 3d at 318–21.  Therefore, having concluded that collateral estoppel precludes Landmark from pursuing the identical request in this case, Landmark is precluded from arguing that its FOIA request is proper.  Accordingly, because Landmark's FOIA request is not a proper FOIA request given that it fails to adequately describe the records sought, the Court will grant summary judgment to the Department.  See Freedom Watch, Inc., 895 F. Supp. 2d at 229 (dismissing FOIA claim because the request did not adequately describe the records sought); see also Latham v. U.S. Dep't of Justice, 658 F. Supp. 2d 155, 161–62 (D.D.C. 2009) (granting summary judgment in favor of the defendant agency because the "[p]laintiff's FOIA request [did] not reasonably describe the records sought and, therefore, [was] not a proper FOIA request. . . . [And b]ecause [the] plaintiff ha[d] not submitted

a proper FOIA request, he ha[d] not exhausted his administrative remedies").[7]

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion

for summary judgment and deny the plaintiff's cross-motion for partial summary judgment.

**SO ORDERED** this 16th day of August, 2017.[8]

REGGIE B. WALTON
United States District Judge

---

[7] Having concluded that Landmark has not submitted a proper FOIA request for the various reasons discussed above, the Court needs not address whether the Department's search was inadequate given that it did not search the custodians' personal email repositories for responsive documents as demanded by Landmark.  See Lewis v. U.S. Dep't of Justice, 733 F. Supp. 2d 97, 107 (D.D.C. 2010) (Walton, J.) ("[A]n agency is under no obligation to respond 'until it has received a proper FOIA request . . . .'" (quoting Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 26 (D.D.C. 2008))).

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.